UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

14 CV   7908

Michael S. Kimm, Esq. (MK4476)
Thomas W. Park, Esq.
KIMM LAW FIRM
333 Sylvan Avenue, Suite 106
Englewood Cliffs, New Jersey 07632
T: 201-569-2880
*Attorneys for Plaintiff*

JUDGE BERMAN

RECEIVED
SEP 30 2014
U.S.D.C. S.D. N.Y.

| | |
|---|---|
| JAE HO LEE and SOYOUN PARK, | |
| Plaintiff, | 14-CV-_____ |
| vs. | |
| SAMUEL AHNE, AHNE LAW, P.C., NOAH BANK, EDWARD SHIN, and CHEOL MIN KIM, | **Complaint with Jury Demand** |
| Defendants. | |

Plaintiffs, Jae Ho Lee and Soyoun Park, for their complaint against the above-named defendants (plaintiffs, collectively), state on knowledge except where stated upon information or belief as follows:

## THE PARTIES

1. Plaintiff Jae Ho Lee is an individual residing in Bergen County, New Jersey, and is Managing Member and operator of Basic Food Groups, LLC, which operates

1

a deli/café known at 24 West 40th Street, Manhattan.  Plaintiff holds 99% of the LLC interest.

2.   Plaintiff Soyoun Park is Jae Ho Lee's wife and resides at the same household.  Plaintiff Soyoun Park is not a legal holder of any interest in the LLC. Despite this fact, she was led to execute a personal guaranty for 100% joint and several obligation on a personal guaranty believed to have been signed for all of the loan debts of the LLC due to the acts and omissions of defendants Samuel Ahne and Ahne Law, PC.

3.  Defendant Samuel Ahne is a lawyer licensed to practice in New York State having his office at 1220 Broadway, Suite 502, New York, New York 10001.  Samuel Ahne practices under the auspices of Ahne Law, P.C., and thus the two are one and the same for purposes of liability.  At all relevant times, defendants Samuel Ahne and Ahne Law, P.C., were supposed lawyers for plaintiff but, in fact, were mired in a multi-level conflict of interest as they also protected the interests of defendant Cheol M. Kim and defendant Noah Bank and Edward Shin.

4. Defendant Noah Bank is a bank organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business believed to be located at Philadelphia, Pennsylvania.  Noah Bank is the successor-in-interest to its former banking namesake known as Royal Asian Bank which was a subsidiary of

2

Royal Bancshares of Pennsylvania. In approximately December 2010, Royal Asian Bank division of Royal Bancshares was bought out by a group of investors led by defendant Edward Shin and Royal Asian Bank was subsequently changed to Noah Bank effective on or about December 31, 2010.

5. Defendant Edward Shin a/k/a Eung Soo Shin is an individual believed to be residing at Ambler, Pennsylvania. At all relevant times, defendant Shin used and misused his authority to facilitate fraudulently-obtained loans described in this complaint.

## NON-DIVERSE, SUPPLEMENTAL PARTY

6. Defendant Cheol M. Kim is a resident of New Jersey believed to be residing at 148 Schuyler Road, Allendale, NJ 07401. Because his residency and domicile are identical to plaintiff's residency and domicile, New Jersey, this defendant is not diverse from plaintiff and thus the Court would lack original jurisdiction over this defendant under section 1332. Plaintiff seeks to bring this defendant into this action as the allegations against defendant Cheol M. Kim arise from a common nuclus of operative facts that are common to all other defendants, i.e., the sale of business interest to plaintiff using fraudulent and deceitful artifice. Defendant Cheol M. Kim is fully amenable to this action through the supplemental jurisdictional statute, 28 U.S.C. 1367, as stated further discussed below.

3

## JURISDICTION AND VENUE

7.   The Court has subject-matter jurisdiction over this action under 28 U.S.C. §1332(a) in that the dispute involves an amount in controversy in excess of $75,000 exclusive of costs and interest and plaintiff is a citizens and domiciliary of New Jersey and defendant is an alien and the Court has jurisdiction of this dispute under the alien/diversity sub-part of the diversity jurisdictional statute.   The Court has supplemental jurisdiction over the non-diverse defendant Cheol M. Kim through the supplemental jurisdiction statute, 28 U.S.C. § 1367.[1]

8.   Venue is proper in this district because all defendants have transacted business in this district and because substantial events arose in this district.

---

1 As discussed in the 2010 First Circuit case, Godin v. Sschenks, 629 F.3d 79, 83 n.4 (1st Cir. 2010):

> Section 1367(a) further provides that '[s]uch supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.' 28 U.S.C. § 1367(a). That § 1367(a) confers on federal courts jurisdiction over state-law claims against non-diverse parties — often termed "pendent party jurisdiction" — is particularly clear in light of that statute's origins. See 13D Wright & Miller, Federal Practice and Procedure § 3567, at 320-23 (3d ed. 2008) (describing § 1367's enactment as directly responsive to the Supreme Court's holding in Finley v. United States, 490 U.S. 545, 109 S.Ct.2003, 104 L.Ed.2d 593 (1989), that the Federal Tort Claims Act does not allow for the assertion of pendent jurisdiction over additional parties).

See Achtman v. Kirby, Mcinerney Squire, 464 F.3d 328, 331 (2nd Cir. 2006) (holding essentially same, without discussion of Finley.

4

## COMMON ALLEGATIONS

9. In November 2012, defendant Kim was an owner/operator of one or more deli/café businesses in New York City, including Basic Food Groups, LLC, in which he held a 99% interest, along with his wife as a nominal owner of 1%. At that time, defendant Kim an acquaintance of plaintiff Jae Ho Lee and he knew that plaintiff Jae Ho Lee was already operating a deli/café in lower Manhattan. As plaintiff has come to learn, defendant Kim was operating Basic Food Groups, LLC, at a significant loss; was not paying and reporting lawful wages under the New York State wage and hour laws; and was unable to sustain profitable operation at all. Defendant Kim was under a mounting pressure to sell the business to someone who could maintain the loan repayment obligation to defendant Noah Bank.

10. Approximately two years before November 2012, defendant Noah Bank and its president Edward Shin provided commercial loans to defendant Kim and his entity Basic Food Groups, LLC. By November 2012, defendants Noah Bank and Edward Shin also knew that Basic Food Groups, LLC, was operating at a loss and that their bank's loan position was facing increasingly stark risk of default.

11. Defendant Edward Shin, for himself and as the CEO of Noah Bank, and defendant Kim conspired and agreed that the business should be sold to someone who would be capable of injecting capital into the business so as to cover what would have

5

been presented as shortfalls to Basic Foods, LLC.  Defendants Edward Shin and Kim

contrived a scenario whereby another deli/cafe operator would be induced to

essentially "assume" the existing debt obligations of Basic Foods, LLC, and "assume"

full operation of the business as a "turn-key" scenario.  Pretextually, defendants Kim

and Shin on multiple occasions, told plaintiff Jae Ho lee that Basic Food Groups,

LLC, was "doing great," "profitable," and was yielding low six figures of salary and

year-end draw for its "owner."

12.  To execute their fraudulent scenario, defendants Edward Shin, Noah Bank

and Kim organized a closing of title where plaintiff Jae Ho Lee would ostensibly be

represented by a "lawyer."   At such a closing of title, those defendants needed a

lawyer who would perform no due diligence for plaintiffs and seek to discover no

risks or pitfalls, essentially someone who would do nothing to protect the interests of

plaintiffs. Defendants Shin and Noah Bank conspired and agreed with defendant Kim

to assign the task to a lawyer that the bank effectively "controlled," so that the lawyer

would "represent" plaintiff purely as a matter of form.  Defendant Edward Shin later

told plaintiff Jae Ho Lee that "this lawyer" is on the bank's list of "pre-approved and

pre-screened lawyers," and would be the most suitable lawyer to represent plaintiffs

at the "closing of title" and urged plaintiff Jae Ho Lee to agree to do so, so that the

loans of Basic Food Groups, LLC, would be rolled over from the responsibility of

6

defendant Cheol M. Kim to plaintiff with no review of the documents and no due diligence.

13. Defendant Shin told plaintiff Jae Ho Lee that, unless plaintiff agrees to use "this lawyer's serve" to consummate the transaction, Noah Bank would not approve a loan for plaintiff Jae Ho Lee as the new operator of Basic Food Groups, LLC, due to the potential for "uncertainties" and "unknown contingencies." Plaintiff Jae Ho Lee then received a telephone call from defendant Samuel Ahne who stated that he had been referred by Cheol M. Kim; defendants Ahne was careful to omit any reference to Noah Bank or Edward Shin so as to avoid unnecessary questions as to his fidelity.

14. In reality, Samuel Ahne was not a neutral lawyer but someone who was specifically selected by the defendants to handle this transaction so that he would intentionally avoid doing any due diligence review for his client and would protect defendants rather than plaintiffs. Defendants Noah Bank, Shin, and Ahne have been involved in numerous other transactions, with defendant Ahne receiving a stream of referrals from defendants Noah Bank and Shin, such that he effectively owed a sense of duty of loyalty to them. Defendant Ahne has developed such a duty of loyalty to defendants Noah Bank and Shin that in connection with another loan defendant Ahne provided an attorney letter certifying that his trust account was holding hundreds of

7

thousands of dollars on behalf of a Noah Bank borrower that was false.

15. Defendant Noah Bank and Edward Shin specifically selected defendant Samuel Ahne and they, in consultation with defendant Kim, arranged for defendant Kim to initiate the phone call for "retention" of defendant Ahne so to avoid seeming as though the bank was orchestrating the transactions.  While plaintiffs have been deprived of the information by defendants, plaintiffs believe that discovery will establish defendant Ahne's long-running relationship with Noah Bank and Edward Shin and his previous representation of Cheol M. Kim antecedent to any "representation" defendant Ahne undertook for plaintiffs.

16. In November 2012, defendant Shin told Ahne that he was being "retained" for plaintiffs; and even defendant Cheol M. Kim placed a call to defendant Ahne to discuss the essence of the transaction as involving the sale of $1.8 million business by a purported "transfer" of the LLC interest.   Tellingly, even though defendant Ahne was to "represent" the plaintiffs, he never met with either plaintiff; never spoke with either plaintiff; never provided advice relating to the pitfalls of the transaction to either plaintiff; never provided due diligence to either plaintiff; and failed to provide a minimal level of protection at all.  Defendant Ahne knew that the purchase of a business, regardless of price, came with risks to the purchaser such as third-party obligations, governmental liens such as tax liens, governmental penalties such as for

labor violations, and various other risks that could have been created during the pre-closing periods that require professionals to engage in due diligence and protect their clients' interests.  Since defendant Ahne's "interest" was elsewhere, providing any protection for plaintiffs was the last thing on his mind, and thus he proceeded to the silumtaneous "contract and closing" never having spoken a single word with his clients.

17.  Within a time frame of less than a month, with no due diligence, no review of business records, no review of sales journals, no review of tax filings, no review of any material financial or corporate records, no search of title, lien or judgment, no investigation into debts and obligations, common legal issues such as labor and wage and hour issues, defendant Ahne scheduled a closing of title on December 13, 2012, at which time various documents were presented to plaintiffs for the first time.  The closing of title was pre-arranged by defendants to be held at Noah Bank's offices at 449 Broad Avenue, Palisades Park, New Jersey. Even though defendant Ahne, whose offices were located in Manhattan, had to travel a long distance he was readily agreeable to the distant closing site because it brought him face to face with his favorite bankers and enabled him to pick up a fee check in the sum of $3,000.00 for failing to do even an hour's worth of real work for benefit of the "clients" who would be charged with the fee.

9

18. The simultaneous "contract and closing" proceeded at lightening speed, and was consummated in less than 20 minutes. Thus, effectively, defendant Ahne's billable rate amounted to $9000 per hour from plaintiffs' viewpoint, in the context of the 20 minute closing of title. At the "closing" of title, the single most important means of protecting plaintiffs was a "buy-back option," whereby, if plaintiffs deemed the business was not, in fact, performing satisfactorily and profitably, plaintiffs could exercise a unilateral option, vested in them, to compel a buyback by defendant Cheol M. Kim so as to effectively undo the transaction on the same terms as plaintiffs' acquisition. Since defendant Ahne had conducted no due diligence, a buy-back agreement could have been used to protect plaintiffs. The subject was specifically conceived by defendant Ahne but, in fact, the conception was done specifically to protect defendant Kim and not defendant Ahne's would-be clients, the plaintiffs.

19. With no advance notice or guidance of plaintiff, the defendants scheduled a simultaneous contract and closing of title on the same date. Plaintiff received no meaningful legal advice and no advice at all as to any conflict of interest and had no discussion or intention to waive any conflict of interest in the transaction. Yet, defendant Ahne was under a trilateral conflict of interest. Defendant Ahne owed direct a duty of loyalty to plaintiffs as he was supposed to represent them and expected to receive a fee from plaintiffs or their new business Basic Food Groups,

LLC.

20. In fact, defendant Ahne considered himself to owe an indirect sense of loyalty to defendants Shinand Noah Bank for their steady stream of referrals and other benefits. Stemming from that pre-existing duty was Ahne's responsibility to ensure that Noah Bank's loan was safe and sound, and wholly repaid by defendant Kim.

21. Defendant Ahne owed a duty of loyalty to defendant Kim as a client whose sale transaction, coupled with the underlying debt to Noah Bank, had to be protected. In other words, in trying to protect Noah Bank's loan from default, and from any attack, defendant Ahne's sense of loyalty also protected defendant Kim so that Noah Bank would not suffer any secondary consequences from any harm suffered by defendant Kim.

22. After defendants Noah Bank and Shin arranged for defendant Ahne to represent plaintiffs, defendant Ahne deliberately took no action to protect plaintiffs' interests, despite defendant's knowledge that the transaction involved almost $2 million and plaintiffs would be held "holding the bag." Defendant Ahne performed no lien or judgment search; conducted no due diligence; provided no advice at all to plaintiffs; did not meet with them; prepared closing documents that were disadvantageous to the plaintiffs; and ultimately induced his "clients" to sign

11

documents that were harmful to their own interests, all of which benefitted Noah Bank. Defendant Ahne did tell plaintiffs that they were "getting a great deal" because plaintiffs would not be infusing any out-of-pocket cash and emphasized that, if plaintiffs were dissatisfied with the acquisition, "you can back out any time, on the same terms as your acquisition." Reality was not the case.

23. Having done nothing to protect plaintiff's interests, defendant Ahne, acting in concert and conspiracy with the other defendants scheduled a simultaneous "contract" and "closing of title" on the same date, December 13, 2012. Even then, knowing that a simultaneous contract and closing was being held, defendant Ahne failed to provide any advice to plaintiffs relating to such matters as (A) conflict of interest; (B) the effects of a simultaneous contract and closing; and ( C) the financial significance of plaintiff's transaction.

24. Defendant Ahne not only failed to provide any affirmative advice, on one specific matter he deliberately provided false information to plaintiffs, relating to the "buy back agreement." Plaintiff Jae Ho Lee desired one means of protection against a bad transaction with the ability to opt out of the transaction if the bookkeeping data relating to sales and expenses did not support a "profitable business" after the acquisition was concluded. Thus, plaintiff Jae Ho Lee specifically negotiated with defendant Kim an option to compel defendant Kim, as seller, to "buy back" the

transaction if plaintiff deemed it unsatisfactory.  At the simultaneous contract and closing of title, however, defendant Ahne, already in consultation with defendants Shin and Kim, attended with a "buy back agreement" that was for benefit of, and subject to the unilateral option of, defendant Kim.  The sham buy back option agreement states, in relevant part:

> Whereas parties have entered into an agreement whereby Cheol M' Kim and Si Won Kim are transferring all their interest in Basic Food Groups, LLC. to Jae Ho Lee;
>
> Whereas Cheol M. Kim (hereinafter "seller" ) desire to retain the option of buying back all the shares of Basic Food Groups, LLC. for any reason;
>
> WHEREFORE;
>
> Parties Cheol M. Kim and Jae Ho Lee hereby agrees as follows:
>
> 1. That Jae Ho Lee hereby grants Cheol M. Kim the option of buying back all the units of Basic Food Groups, LLC. at the same terms and conditions sold to Jae Ho Lee;
>
> 2. Cheol M. Kim must provide 30 days written notice to exercise such option.
>
> 3. Said option shall remain personal to Cheol M. Kim and is not transferable;
>
> 4. This Agreement shall be construed within the Laws of the state of New York and further may not be modified unless in writing.

25. Thus, the clear and unambiguous, facial language of the so-called buy back option states that the option is available solely to defendant Kim and not to plaintiff such that plaintiff could not <u>force or compel or require</u> defendant Kim to buy the business interest back due to poor revenue information or for any other reason.

26. Other disastrous events ensued at the simultaneous contract and closing of title and defendant Ahne's failure to advise plaintiffs at all. Despite the fact that defendant Ahne purported to serve in the capacity of plaintiffs' lawyer, advocate, and fiduciary, he obtained a written release of claims such that, effectively, plaintiff Jae Ho Lee could never sue the person who sold the business interest to him and the person who arranged for plaintiff Jae Ho Lee to retain defendant Ahne and for Ahne to manipulate the transaction as one entirely adverse to plaintiff Jae Ho Lee, in case of plaintiff discovering any reason for dispute. Defendant Ahne prepared and obtained from plaintiff Jae Ho Lee a written release as follows:

RELEASE

> To all whom these Presents shall come or may concern, know that Jae Ho Lee and Basic Food Groups, LLC. ("RELEASORS"), in consideration of the sum of $1.00 and other valuable consideration hereby releases and discharges Cheol M. Kim and Si won Kim (the "RELEASEE"), the RELEASEES' heirs, successors and assignees from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills,

14

specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever in law, admiralty and equity, that, the RELEASOR or the RELEASORS' successors and assigns had, have or may have had from December 13, 2012 to end of the World.

The words "Releasor" and "Releasee" include all releasors and releasees under this Release.

This RELEASE may not be changed orally.

In Witness Whereof, t.he RELEASOR has caused this RELEASE to be executed by its duly authorized officers and its seal to be hereunto affixed on, on this 13th day of December, 2012.

27.   As a showing of his supposed "fair and balanced" approach, defendant Ahne purported to obtain an identical "Release" from defendant Kim.  While doing so, for the first time, defendant Ahne told plaintiff Jae Ho Lee, during the simultaneous contract and closing of title, during the split-second momentary lapse while plaintiff executed the "Release," that "it is standard to exchange releases."  The fact that defendant Ahne created plaintiff's release in favor of the adverse party to the transaction plainly shows the direct conflict of interest; such conflict of interest was never discussed with plaintiff Jae Ho Lee; plaintiff never knowingly and intelligently assented; and plaintiff never knowingly and intelligently waived his right to expect

complete loyalty from his fiduciary attorney.

28.  Defendant Ahne failed to discuss with plaintiff any rights, obligations, or concerns relating to his role as defendant Kim's counsel.  Defendant Ahne commented that, "in reality," defendant Kim was proceeding with this transaction "without a lawyer," but withheld from plaintiff that he, defendant Ahne, was in fact protecting the interests of defendant Kim.  Another conflict was presented where defendant Ahne was causing plaintiffs to execute a "Security Agreement" for a $300,000 supposed "purchase money" interest in favor of defendant Kim and chargeable to his own client Jae Ho Lee, as debtor-obligor.

29. Upon information and belief, defendant Ahne further drafted the means of protecting defendant Kim's interests on the assets of Basic Foods, LLC, by asserting a lien interest against the following items, in sweeping language:

> All fixtures, equipment, goods, inventory, accounts receivable, contract rights, Instruments, documents of title, chatel paper, notes, drafts, general intangible And other personal property acquired wherever located whether now now owned or hereafter acquired.

30.  The effect of a "security agreement" of such kind is to render the security holder-obligee, namely defendant Kim, the effective "owner" of the broad and unlimited tangible and intangible assets of Basic Food Group, LLC, such that plaintiffs' personal and business interests were directly at stake.  Despite this fact,

with no advice and no informed consent, defendant Ahne directed plaintiffs to execute this and other legal instruments adverse to plaintiffs without a single word of advice relating to the need and propriety for such legal instrument and such conflicting procedure, in advance of the closing of title.

31.   Plaintiffs' rights were even further compounded when defendant Ahne presented to each plaintiff, on the day of simultaneous contract and closing of title, an individual "Guaranty" that fortified the security agreement filed as a recordable lien against Basic Food Group, LLC.   The terms of the guaranty stated were as thorough and expansive as the security agreement's covered assets, stating:

GUARANTEE

The undersigned guarantees prompt and full performance and payment according to the terms of the within agreement to the holder hereof and in the even of default, authorizes any holder hereof to proceed against the undesigned, for the full amount due including reasonable attorneys' fees and hereby waives presentment, demand, protest, notice of protest, notice of dishonor and any and all notices of demand of whattever character to which the undersigned might otherwise be entitled. The undersigned further consents to any extension granted by any holder and waives notice thereof.  If mote than one guarantor, obligation of each shall be joint and several.

WITNESS the hand and seal of the undersigned this 13 day of December 2012.

/s/ Jae Ho Lee

17

32. Although plaintiff Park has not been provided with a copy of the Guaranty she believes she was directed to execute, plaintiffs believe that both of them, in fact, were directed to execute separate Guaranty forms.   Defendant Ahne provided plaintiffs with no advice, no review, no representation as to the nature, scope, effect, and reasons for or against providing a guaranty at all.   There was no antecedent request from defendant Kim or Noah Bank that a personal guaranty would be sought but defendant Ahne proceeded to provide a full guaranty voluntarily for benefit of defendant Kim and/or Noah Bank, i.e., both of whom are antagonistic to plaintiffs' interests, and thereby placed his own clients in an adversarial situation rather than protecting them.   These acts were directly in conflict with his duty as a lawyer and fiduciary of plaintiff; defendant Ahne effectively served in the capacity of phantom lawyer for defendant Kim and/or for Noah Bank.

33.   Defendant Ahne's intentions in obtaining from his own "client" legal instruments directly adverse to his "client's" interests not merely to benefit defendant Kim.  In reality the overriding motivation was to protect defendants Noah Bank and Shin, and collaterally to protect defendant Kim, so that when Basic Food Group's loan with Noah Ban was "rolled over" and changed from those obligations signed by "Cheol M. Kim" to "plaintiffs," the interests of Noah Bank, and hence of defendant

Shin's interests as the CEO of the bank, would be protected to the maximum degree possible. This was not merely a hypothetical reason for protecting a lender.

34. The transaction was stated as a $1.8 million sale/purchase. In defendant Ahne's Closing Statement, which was partially completed, the following facts are apparent, essentially in the typed portion of the closing statement:

CLOSING STATEMENT

RE: Purchase of All Outstanding (100%) Units of Basic Food Groups, LLC.

CLOSING DATE: December 13,2012

CLOSING PLACE: Offices of Noah Bank- Palisades Park Branch

SELLER: Cheol M. Kim and Si Won Kim

ADDRESS: 148 Schuyler Rd. Allendale, NJ 07401

BUYER: Jae Ho Lee

ADDRESS: 140 Hillcrest Av. Leonia NJ 07605

TERMS:
(A)PURCHASE PRICE: $ 1,800,000.00
(B)AT CONTRACT : $
(C)AT CLOSING : $
CASH : $
PROMISSORY NOTE: $

ADJUSTMENTS
DEBITS     CREDIT

19

| SELLING PRICE | $1,800,000.00 | |
|---|---|---|
| INVENTORY | | |
| AT CONTRACT $ | | |
| MORTGAGE (S) | | $300,000.00 |
| SECURITY DEPOSIT | | |
| | | |
| BALANCE AT CLOSING | $1,800,000.00 | $300,000.00 |
| TOTAL | $1,500,000.00 | |

35. The "Closing Statement" deliberately did not identify the "Client" because all parties to the transaction, the bank, Kim and plaintiff, were all actually or effectively "clients" of defendant Ahne simultaneously, despite the trilateral conflict that was palpably presented. The "Closing Statement" was created for benefit of all three parties and, upon information and belief, it was provided to Noah Bank who filed it within its business records.

36. At the bottom margin of the "Closing Statement," during the simultaneous contract and closing of title, defendant Ahne made the following hand notations as to disbursements of the money:



BALANCE AT CLOSING  $1,800,000.00    $300,000.00
TOTAL                       $1,500,000.00
PAY OFF: $895,785.79 —NOAH BANK
BALANCE REMAINING : $604,214.21 .
PAID LOAN EXPENSES: $34,165.00
Bank Fee & Expenses  $6,805.27.
AVAILABLE TO BUYER TO PURCHASE STORE : $363,283.54
NET BALANCE TO SELLER : $240,930.27

37.  All defendants gained from the transaction at the expense of plaintiffs.

38.  Plaintiffs' losses have continued to mount.  In August 2014, almost a year and a half after the consolidated contract and closing, the effects of defendant Ahne's failure to protect plaintiffs and the other defendants' fraudulent activities came to light.  The New York State Labor Department served Basic Food Group, LLC, with a notice of certain labor claims that had been addressed to Cheol M. Kim, showing that the company was now being expected to pay a labor fine that arose pre-contract when it was being operated by defendant Cheol M. Kim.

39.  The Labor Department's August 4, 2014, letter states, in relevant part:

CHEOL KIM                                              Section(s):
ZEYTINZ D/B/A BASIC FOOD GROUPS LLC                    661, 142-2.7, 191.1, 196d
24 WEST 40TH ST
NEW YORK, NY 10018

Dear Cheol Kim:

Our investigation indicates you may be in violation of the above section(s) of the New York State Labor Law, Industrial Code or regulation for which we may bring a legal proceeding against you. Before taking further action, it is Department policy to attempt to achieve compliance and reach an amicable resolution by holding a compliance conference.

Accordingly, we have scheduled a conference and request that you appear promptly at the Department of Labor office listed here:

Address:                      Date: October 29, 2014                 Time: 10:00 AM
75 Varick Street
7th Floor, Room A
New York, NY 10013

This is your final opportunity to bring any evidence that you have not yet presented to the Division of Labor Standards. Instead of attending, payment of $63,502.39 received in our office no later than August 19, 2014 will fully resolve the matter. Your failure to appear may result in a decision against you. We appreciate your full cooperation.

INFORMATION MAY BE REQUIRED FOR THE CONFERENCE. PLEASE BRING THE FOLLOWING (IF THE BOX IS CHECKED):                                                                    38.

☒ This notice of compliance conference

40.  Not only was Basic Food Group, LLC, operating unprofitably, it appears to have had a preexisting labor violation which was hidden by defendants Kim and Shin and Noah Bank which they shielded from plaintiffs.  Defendant Ahne was in a position of protecting plaintiff from such latent harms from third-parties and direct parties, along with other risks that could have been prevented or at least minimized, but his loyalty to defendants Kim or Shin or Noah Bank or both resulted in his failure to take affirmative acts to protect plaintiff, his real client, the only person whom defendant Ahne actually charged a supposed "legal fee."

### Count One — Legal Malpractice
### Against defendants Ahne and Ahne Law PC

41. The foregoing paragraphs are incorporated by reference.

42.  Defendants Samuel Ahne and Ahne Law, P.C., owed a fiduciary duty to plaintiffs relating to their acquisition of the controlling interests of Basic Food Group, LLC. Despite the fact that plaintiffs were becoming obigated to $1.8 million in notes, loans, obligations, and other obligations, and despite the fact that plaintiffs may be infusing their own funds into the business scenario, defendant Ahne failed to provide a minimal degree of protection for plaintiffs.

43.  On the contrary, as discussed above, defendant Ahne failed to engage in any due diligence, any review of important legal instruments, failed to provide any

advice, failed to meet with the clients, failed to protect them at all. Even worse defendant Ahne created legal instruments that were antagonistic to and contrary to the legal and financial interests of each plaintiff. Defendant Ahne caused them to sign and obligate themselves to numerous financial and legal obligations; intentionally created a buy-back agreement that favored the wrong party; and deliberately avoided protecting plaintiffs at all.

44. Defendant Ahne thereby breached his fiduciary duty to plaintiffs.

## Count Two — Declaratory Judgment
## Against All Defendants

45. The foregoing paragraphs are incorporated by reference.

46. Because defendant Ahne was effectively serving to protect the interests of the other defendants and not the interests of plaintiffs, the instruments borne of the fiduciary breaches by Ahne, for benefit of the other defendants, should be declared null and void ab initio. There exists a dispute between plaintiffs and the other defendants whether any of the instruments arising out of the sham, same-day "contract and closing of title" are legally enforceable and plaintiffs respectfully maintains that they should be declared unenforceable due to the severe breaches committed by defendant Ahne.

47. Plaintiffs have not been provided with the full paper trail, including the

bank loan history, despite repeated requests by plaintiff and plaintiff's counsel Kimm Law Firm.  On July 22, 2014, plaintiffs' counsel sent written requests to defendants Noah Bank and Cheol M. Kim as follows:

48.  We represent Basic Foods, LLC, and we write concerning two matters which have been previously raised by its Managing Member Mr. Jae Ho Lee.  We request your written response to this request for information and business records belonging to Basic Foods, LLC, by the close of business Thursday.

> 1. We understand that the sale-purchase transaction was consummated as a "stock-transfer" scenario rather than sale-purchase of assets, in December 2012, based upon factual representations by the prior owner Cheol M. Kim and the bank's president Edward Shin that the business revenue exceeded operating expenses, debt servicing expenses, and a salary yield to the "owner" in the moderate six figure range.  We understand that the price Mr. Lee paid for the stock transfer was $1.8 million.  Noah Bank supported the valuation of the business and the parties proceeded to close title with the lawyer designated by Noah Bank.  Mr. Lee states that the price was assured as being market price by Edward Shin who also vouched for Kim's bona fides as well as the value of the business.
>
> We are reviewing Basic Foods, LLC's loan history so as to ascertain certain facts relating to the value of the assets when the transaction closed.  It is our understanding that the transaction closed as a "stock transfer" from Mr. Kim to Mr. Jae Ho Lee, such that the entity Basic Foods, LLC, remains uninterrupted.  It is our understanding that Mr. Lee
> Page 2

recently requested from both of you the loan history and related records pertaining to Basic Foods, LLC, before Mr. Lee became its new owner/member.   It is our understanding that each of you is withholding those business records of Basic Foods, LLC.

When all parties opted for a "stock transfer" so that Basic Foods, LLC, as a legal person, would continue to exist, all parties also agreed that Basic Foods, LLC's books and records and all transactional history, documents, and the like would be retained by, and for, Basic Foods, LLC. As the Managing Member of Basic Foods, LLC, Mr. Lee has been requesting the return of all such business records, and we are completely perplexed at each of your "refusal" to cooperate. Since a business entity including an LLC is a legal person and the legal person's business records must be maintained at its offices for benefit of the business, please explain why you have asserted contrary conduct.

In case that was a mere misunderstanding, we reiterate in writing that which Mr. Lee previously requested of each of you. Please immediately produce all business records and banking records, including all loans and history documents pertaining to Basic Foods, LLC, to our firm as counsel for Basic Foods, LLC. Our request to Noha Bank is for a full and complete copy of the entire bank records as those records were apparently made a copy for the company's own file. Please comply within 5 days as you have both have had sufficient time since Mr. Lee initially requested those materials in May 2014. This request covers all records pertaining to Basic Foods, LLC, from inception through now.

2. We also understand that a three-way discussion of Noah Bank, Kim and Mr. Lee recently resulted in a buyback agreement, but that as a condition of Mr. Kim's

taking the business back the bank is requesting Mr. Lee to provide his personal guaranty along with the corporate guaranty of his independent business Hudson Produce, Inc., so as to guaranty the loan performance of a third-party (Kim) from whom the "stock" had previously been purchased. As we understand it, Mr. Lee is being forced to take a loss of $500,000 from the original purchase price of $1.8 million, with the pending stock transfer to be done for $1.3 million and yet he is being required to supply a third-party guaranty for the original assignee of the stock shares. Please provide a detailed explanation as to the grounds for these remarkable differences both in price and in the mode of transfer.

We also understand that the third-party guaranty scenario has been explained as a requirement of the SBA as a condition precedent to the approval of Kim. We understand that Mr. Lee has already requested a specific regulation, policy, or other verifiable requirement that supports this position, and we reiterate his pending request.

Page 3

We will be glad to pick up the business records we have requested, along with the information requested. Please contact us by the close of business Thursday as this matter is of the utmost time-sensitive matter for Basic Foods, LLC, and Mr. Lee.

Thank you for your attention.

49. Separately, on July 22, 2014, plaintiff's counsel wrote defendant Ahne and requested the entire banking history file along with the client file:

We represent Basic Foods, LLC, and its investor Mr.

Jae Ho Lee.

Mr. Lee is involved in a time-sensitive review of Basic Foods's business and financial issues. We are therefore constrained to request your prompt attention to this matter by the close of business this Wednesday, relating to Mr. Lee's acquisition of substantially the company's interest from Cheo M. Kim in December 2012 and we write to request some clarification of the facts surrounding the transaction. Basic Foods and Mr. Lee do not waive the attorney-client privilege and expect your continued adherence.

1. Referring to the Closing Statement apparently prepared by you, attached, there appear several items at the bottom of the document, of which some are not readily apparent from the supporting documents. We request your detailed explanation as to each line item.

2. We understand that you were referred this matter from Noah Bank's president Edward Shin and you have been referred other such transactional matters previously by Noah Bank. We request a list of all transactions or legal matters which were referred by Noah Bank during the past six years.

3. We understand that Noah Bank insisted on a "stock transfer" rather than an asset sale/purchase. We request a detailed explanation as to why the transaction was done as a "stock transfer" rather than an asset sale. We request a copy of all written disclosure of the "pros and cons" of such mode of transfer.

Page 2

4. We understand that you represented both Mr. Lee and Cheol M. Kim in the transaction and you also

previously represented Cheol M. Kim in the underlying business and loan transactions. We request a detailed explanation as to the disclosures you provided to Mr. Lee as to the "pros and cons" of such dual representation along with any waiver form signed by Mr. Lee.

5. Even though Basic Foods, LLC, as a legal person, has continued to operate through succession of Managing Members, it is our understanding that both Cheol M. Kim and Noah Bank have refused to provide Basic Foods, LLC, with a full history of the business records pertaining to its business and banking affairs, including the prior loans and business records. We understand that Mr. Lee requested and obtained from you your copy of the business records of Basic Foods, LLC, in April 2014 or so, but our review of those records revealed that those records conspicuously omitted any of the pre-December 2012 closing records, which we believe to be in your possession. We request a detailed explanation as to the legal grounds for not turning over all business and banking records of Basic Foods, LLC, to Basic Foods, LLC, from inception through now.

6. There appears a "Buyback Agreement" which Mr. Lee maintains is for his benefit. Our reading of the document shows that the "Buyback Agreement" is for only the benefit and option of Cheol M. Kim (hence: "Said option shall remain personal to Cheol M. Kim and is not transferable;") Please provide a detailed explanation why Mr. Lee was explained that the "Buyback" is for his benefit; and why it appears to protect the seller Cheol M. Kim instead of Mr. Lee, particularly from your viewpoint as counsel for Mr. Lee, regardless of also serving as counsel for Cheol M. Kim.

7. There appear to be two separate "Releases" signed by Cheol M. Kim and Mr. Lee but the releases do not specify any issue being released. Please provide a

detailed explanation as to what the releases were intended to include, and why such facts were not stated in the releases.

8. There appears to have been no due diligence review concerning the finances and viability of Basic Foods, LLC, to carry its debts, expenses, and to generate a profit for its owner/member. Please explain in detail all due diligence done; not done and why; or waived and how; along with all written records which relate to such issues. Specifically, how was the $1.8 million price supported in terms of business value as well as revenue and expenses.

9. Given that you have previously or simultaneously represented Cheol M. Kim, please explain whether there was any privileged communication between you and Kim Page 3
either verbally or in writing (including email) and if so, the subject matter of such privileged communication.

Thank you for your prompt attention.

50. Defendant Ahne responded with a carefully worded, perfunctory letter and failed to provide any of the bank loan documents or the loan history file.

### Count Three — Breach of Agreement and Implied Covenant of Good Faith and Fair Dealing Against All Defendants

51. The foregoing paragraphs are incorporated by reference.

52. The covenant of good faith and fair dealing is implied in every contract and is implied in the purported contract(s) between plaintiffs and defendant Ahne; contract(s) plaintiffs and defendant Kim; and contract(s) between plaintiffs and

29

defendant Noah Bank.

53.   Defendants and each of them breached the express agreement with plaintiffs and also breached the implied covenant of good faith and fair dealing by their acts, omissions, and breaches.

### Count Four — Fraud in the Inducement
### Against Defendant Cheol M. Kim

54. The foregoing paragraphs are incorporated by reference.

55. Defendants and each of them have committed one or more acts of fraud in the inducement.

56. Based upon his operation of the subject business, defendant Cheol M. Kim knew or should have known that it was operating at a loss because the business revenue failed to cover basic operating expenses (cost of goods sold, labor, rent, utilities, tax, and routine fixed and variable expenses). He also knew that he had been operating the business by "cutting corners," such as in violation of labor laws and regulations and had been notified of an audit from the NYS Labor Department. Defendant Cheol M. Kim knew that, if he were to disclose the true and accurate picture of the financial state of the business, plaintiff would not purchase the business so he enlisted defendant Edward Shin to provide "back up" support for his knowingly making false representations that the business was generating a profit which was

sufficient to provide a six figure salary-income for the owner-operator.

57.  For defendant Cheol M. Kim, inducing and persuading plaintiff to close title without due diligence was vital because, had anyone engaged in minimal due diligence, his fraudulent intent would have been uncovered.  While the responsibility to "seal the deal" was entrusted upon defendant Ahne, who executed it by failing to perform even minimal due diligence, defendant Cheol M. Kim led the pack by knowingly making false representations that the business was profitable when he clearly knew that it was not profitable at all.

## Count Five — Fraud in the Inducement Against Defendants Cheol M. Kim, Edward Shin and Noah Bank

58.  The foregoing paragraphs are incorporated by reference.

59.  Although banks are typically not in the business of inducing a transaction, and generally serve as passive lenders or underwriters, in this case, as in many business transactions where defendant Edward Shin has been involved, these "bank" defendants played such a role and they played a substantial role in inducing plaintiff to apply for an SBA loan through these defendants that provided much of the purchase-money funding for defendant Cheol M. Kim to "cash out" and reinvest that money out of a failing business into another loan which was, upon information and belief, also funded by defendants Edward Shin and Noah Bank.

60.  Noah Bank is a preferred SBA lender.  Noah Bank is routinely presented with so-called SBA 7(a) loan applications from Korean business people in the tri-state area.  At its website, Noah Bank boasts itself as the the ninth most prolific lender of SBA 7(a) loans, having originated $150,256,000 of those loans in 2013 alone. *See* http://www.noahbank.com/sba_ranking_2013.html. This defendant's website shows that it was designated as an "SBA Preferred Lenders Program (PLP) Lender." This means:

> Noah Bank received delegation from the SBA to make final credit decision and most of the servicing and liquidation authority and responsibility. As a Preferred SBA Lender, Noah Bank is committed to qualify businesses more easily and provide them with more flexible terms than conventional loan options.

http://www.noahbank.com/sba.html.

61.  As a preferred lender, Noah Bank, and as its CEO, defendant Edward Shin, know that whatever SBA loan package that they "approve" on behalf of the government and guaranteed by the United States Small Business Administration (SBA) is then capable of being sold to portfolio assignees, securitized, or retained by Noah Bank for servicing and generation of periodic profits from interest payments and other fee payments.  Defendants Noah Bank and Edward Shin also know that, as PLP agents, the U.S. government will not review their lending practices unless the

32

government is presented with a guaranty claim or payment request, which occurs upon a loan default. Upon information, defendant Noah Bank and its CEO defendant Shin routinely use this knowledge, consistent with their <u>advertised statement</u> — "committed to qualify businesses more easily and provide them with more flexible terms than conventional loan options[]" — to make knowingly improper loans which violate the SBA Operating Guidelines.

62. In the case of certain loans, defendants Noah Bank and Edward Shin have manufactured "business records" that were submitted to induce loans. For example, defendants issued and underwrote a loan involving a company known as 32 Madison Farm, Inc., a New York entity which operates a deli/café in New York City. In 32 Madison, an individual named Byung-Hoon Kim, aka James Kim, holds a minority 40 percent while a second individual Chin Myung Yi holds 60%. When the company was being organized, because the insiders did not have adequate capital, they obtained an SBA loan from none other than Noah Bank and Edward Shin, who is actually the silent partner and principal equitable owner of the 40% shares of Byung-Hoon Kim aka James Kim.

63. The landlord of 32 Madison required proof of "financial ability" from the principals, before a lease could be provided. What the principals arranged was, in fact, a letter from Noah Bank certifying that the sum of $1,000,000 or approximate

33

thereof was sitting in a Noah Bank account in the name of Chin Myung Yi when in fact neither the account nor the funds existed. Unaware of these false facts, the landlord reportedly issued a consent to assign the lease from the predecessor owner to 32 Madison; and the entity consummated the SBA loan from Noah Bank.

64. In the case of defendant Cheol M. Kim's loans, upon information and belief, defendants Noah Bank and Shin knew, from obtaining and reviewing defendant Kim's financial records, that loans totaling $1.5 million were not justified but issued those loans nonetheless. In its capacity as an SBA preferred lender, defendant Noah Bank and therefore its CEO Edward Shin who reviewed the loans of defendant Cheol M. Kim had full access to defendant Cheol M. Kim's sales/revenue information, as well as tax returns and other financial records. Upon information and belief, those business and personal financial records of Cheol M. Kim showed a materially deficient, inadequate basis a bank loan the size and amount extended to defendant Cheol M. Kim by these defendants. Despite their knowledge, these defendants issued an SBA preferred lender's SBA loan(s) to defendant Cheol M. Kim knowing full well that they were deliberately and knowingly taking a gamble that the business activity of Basic Food Group, LLC, will somehow improve in the future.

65. The bank defendants received periodic reports from defendant Cheol M. Kim from time to time and were well aware that business was not improving and that

34

it would require some more infusion of capital to keep it afloat.

66. When defendant Cheol M. Kim fraudulently induced plaintiff to acquire his interest, defendants Noah Bank and its CEO Edward Shin knew that they were assisting defendant Cheol M. Kim to commit fraud in the inducement and that they were therefore committing fraud in the inducement upon plaintiff and aiding and assisting defendant Cheol M. Kim in his acts. These bank defendants were under a duty to not deceive a borrower but they knowingly participated and perpetuated in the sham "great business" scenario presented by defendant Kim to cause and induce plaintiff to acquire his interest without minimal due diligence.

67. On July 22, 2014, well before this action was commenced, plaintiff directly and through plaintiff's counsel demanded production of the entire bank loan documentation concerning "Basic Food Group, LLC," who previously was a "borrower" of Noah Bank when defendant Cheol M. Kim was operating the entity, and who became a renewed "borrower" when plaintiff obtained the bank defendants' SBA loan to discharge the antecedent loan that preexisted plaintiff's ownership. Since the same entity was involved in multiple loans, and plaintiff was demanding production of the entity's previous loan records, defendants should have produced the records or should have interposed legally tenable objections; in fact, defendants failed to do so.

35

68.  Plaintiff's counsel's July 22, 2014, letter to Noah Bank and Cheol M. Kim

stated in relevant part:

> We represent Basic Foods, LLC, and we write concerning two matters which have been previously raised by its Managing Member Mr. Jae Ho Lee.  We request your written response to this request for information and business records belonging to Basic Foods, LLC, by the close of business Thursday.
>
> 1. <u>We understand that the sale-purchase transaction was consummated as a "stock-transfer" scenario rather than sale-purchase of assets, in December 2012, based upon factual representations by the prior owner Cheol M. Kim and the bank's president Edward Shin that the business revenue exceeded operating expenses, debt servicing expenses, and a salary yield to the "owner" in the moderate six figure range.  We understand that the price Mr. Lee paid for the stock transfer was $1.8 million.  Noah Bank supported the valuation of the business and the parties proceeded to close title with the lawyer designated by Noah Bank.</u>  Mr. Lee states that the price was assured as being market price by Edward Shin who also vouched for Kim's bona fides as well as the value of the business.
>
> We are reviewing Basic Foods, LLC's loan history so as to ascertain certain facts relating to the value of the assets when
the transaction closed. It is our understanding that the transaction closed as a "stock transfer"
from Mr.  Kim to Mr. Jae Ho Lee, such that the entity Basic Foods, LLC, remains
uninterrupted.  It is our understanding that Mr. Lee
> Page 2
>
> recently requested from both of you the loan history and related records pertaining to Basic Foods, LLC, before Mr. Lee became its new owner/member.  It is our understanding that each of you is withholding those business records of Basic Foods, LLC.
>
> When all parties opted for a "stock transfer" so that Basic Foods, LLC, as a legal person, would continue to exist, all parties also agreed that Basic Foods, LLC's books and records

and all transactional history, documents, and the like would be retained by, and for, Basic Foods, LLC. As the Managing Member of Basic Foods, LLC, Mr. Lee has been requesting the return of all such business records, and we are completely perplexed at each of your "refusal" to cooperate. Since a business entity including an LLC is a legal person and the legal person's business records must be maintained at its offices for benefit of the business, please explain why you have asserted contrary conduct.

In case that was a mere misunderstanding, we reiterate in writing that which Mr. Lee previously requested of each of you. Please immediately produce all business records and banking records, including all loans and history documents pertaining to Basic Foods, LLC, to our firm as counsel for Basic Foods, LLC. Our request to Noha Bank is for a full and complete copy of the entire bank records as those records were apparently made a copy for the company's own file. Please comply within 5 days as you have both have had sufficient time since Mr. Lee initially requested those materials in May 2014. This request covers all records pertaining to Basic Foods, LLC, from inception through now.

2. We also understand that a three-way discussion of Noah Bank, Kim and Mr. Lee recently resulted in a buyback agreement, but that as a condition of Mr. Kim's taking the business back the bank is requesting Mr. Lee to provide his personal guaranty along with the corporate guaranty of his independent business Hudson Produce, Inc., so as to guaranty the loan performance of a third-party ( Kim) from whom the "stock" had previously been purchased. As we understand it, Mr. Lee is being forced to take a loss of $500,000 from the original purchase price of $1.8 million, with the pending stock transfer to be done for $1.3 million and yet he is being required to supply a third-party guaranty for the original assignee of the stock shares. Please provide a detailed explanation as to the grounds for these remarkable differences both in price and in the mode of transfer.

We also understand that the third-party guaranty scenario

has been explained as a requirement of the SBA as a condition precedent to the approval of Kim. We understand that Mr. Lee has already requested a specific regulation, policy, or other verifiable requirement that supports this position, and we reiterate his pending request.

Page 3

We will be glad to pick up the business records we have requested, along with the information requested. Please contact us by the close of business Thursday as this matter is of the utmost time-sensitive matter for Basic Foods, LLC, and Mr. Lee.

Thank you for your attention.

Very truly yours,

Michael S. Kimm

(Emphasis added.)

69.  The transaction was consummated as a "stock-transfer" scenario rather than sale-purchase of assets, in December 2012, based upon factual representations by the prior owner Cheol M. Kim and the bank's president Edward Shin that the business revenue exceeded operating expenses, debt servicing expenses, and a salary yield to the "owner" in the moderate six figure range, meaning $200,000 to $400,000. The contract price plaintiff paid for the stock transfer was $1.8 million. Noah Bank supported the valuation of the business and the parties proceeded to close title with the lawyer designated by Noah Bank.

70.  At the simultaneous contract and closing of title, the bank defendants and

defendant Cheol M. Kim all continued to perpetuate their flagrant lies that the business was a profitable business when, in fact, the financial records of Cheol M. Kim which existed at the time of closing, upon information and belief, failed to provide any such basis and, in fact, would have showed, upon information and belief, that the business was unable to perform the loan repayment requirements, much less show profitability. Plaintiff relied reasonably upon these defendants' representations and inducements, and believed and relied upon their representations, plaintiff's belief and reliance were reasonable and justifiable, and plaintiff suffered injury directly and proximately caused by defendants, for which plaintiff is entitled to damages.

71. Defendants have failed to respond at all to plaintiff's counsel's July 22, 2014, letter quoted above, and have thereby effectively adopted and admitted the substantive contents of the letter, as provided by F.R.E. 801 and the advisory committee notes to 801(d)(2)(B) which provide:

> (B) Under established principles an admission may be made by adopting or acquiescing in the statement of another. While knowledge of contents would ordinarily be essential, this is not inevitably so: "X is a reliable person and knows what he is talking about." See McCormick §246, p. 527, n. 15. Adoption or acquiescence may be manifested in any appropriate manner. When silence is relied upon, the theory is that the person would, under the circumstances, protest the statement made in his presence, if untrue. The decision in each case calls for an evaluation in terms of probable human behavior. In civil cases, the results have generally been satisfactory. . . .

(Emphasis added.) See, e.g. United States v. Miller, 478 F.3d 48, 51 (1st Cir. 2007)

("a party's agreement with a fact stated by another may be inferred from (or 'adopted'

by) silence . . . when (I) a statement is made in a party's presence, (ii) the nature of the

statement is such that it normally would induce the party to respond, and (iii) the

party nonetheless fails to take exception."); United States v. Lafferty, 503 F.3d 293,

306 (3d Cir. 2007) ("Whether a statement is admissible as an adoptive admission

turns on (1) whether the statement was such that, under the circumstances, an

innocent person would deny the statements and (2) whether there are sufficient

foundational facts from which the jury may infer that the defendant heard,

understood, and acquiesced in the statement."); Rahn v. Hawkins, 464 F.3d 813, 821

(8th Cir. 2006) ("[A] statement is attributable to a person when he or she stands silent

in the face of its utterance if the natural response would be to deny it if untrue, and

the common law traditionally has allowed witnesses to be impeached by their

previous failure to state a fact when they would have naturally done so. Nor is there

any requirement that the statement be inculpatory or otherwise incriminating in

nature; all that is required is that a reasonable person would have spoken up.")

(citations omitted); see also Mitchell v. United States, 526 U.S. 314, 328, 119 S.Ct.

1307, 143 L.Ed.2d 424 (1999) (holding that adverse inferences may be drawn in civil

cases where a party refuses to testify in response to probative evidence offered

40

against them).

72.  In fact, when the closing of title was held, and even then plaintiffs had no

idea that they were proceeding to a simultaneous "contract and closing" at the same

moment, with no due diligence; no prior review with "their attorney"; on the basis of

false verbal representations, it was <u>fait accompli</u>.  All defendants and each of them

owed a duty to plaintiffs; each of them violated their duty; the non-lawyer defendants

made affirmative, false representations which were false and material at the time they

were used to induce plaintiffs, and plaintiffs have been injured.  Their injury is being

saddled with a business that has been financially in turmoil; in rolling over the prior

loan of "Basic Food Group, LLC," into a new loan; and in having not been protected

at all against claims, future claims, and indeed the overall loss scenario.

WHEREFORE, plaintiff respectfully requests:

A. liability determination in plaintiff's favor and against the defendants,

jointly and severally, on each of the claims presented in this action;

B. award of compensatory damages against defendants and each of them

upon each of the claims;

C.  award of punitive damages against the defendants and each of them

for their bad faith acts committed willfully, maliciously, and wantonly;

D. award of legal fees, other professional fees, and costs incurred in this

action as is stated in paragraph 3 of the written agreement; and

    E. disgorgement of all gains of each defendant;

    F. any other relief the Court deems just and proper.

### JURY TRIAL

Pursuant to Rule 38 of the Federal Civil Rules plaintiff demands a trial by jury.

Dated: September 29, 2014      /s/ Michael S. Kimm

                          Michael S. Kimm, Esq.
                          Thomas W. Park, Esq.
                          KIMM LAW FIRM
                          333 Sylvan Avenue, Suite 106
                          Englewood Cliffs, New Jersey 07632
                          T: 201-569-2880
                          *Attorneys for Plaintiff*

action as is stated in paragraph 3 of the written agreement; and

E. disgorgement of all gains of each defendant;

F. any other relief the Court deems just and proper.

## JURY TRIAL

Pursuant to Rule 38 of the Federal Civil Rules plaintiff demands a trial by jury.

Dated: September 29, 2014          /s/ Michael S. Kimm

Michael S. Kimm, Esq.
Thomas W. Park, Esq.
KIMM LAW FIRM
333 Sylvan Avenue, Suite 106
Englewood Cliffs, New Jersey 07632
T: 201-569-2880
*Attorneys for Plaintiff*

42